Isabel Antonia García López, demandante y recurrente, *v.* Juan Méndez García et al., demandados y recurridos.

Número: 401      Resuelto: 13 de mayo de 1963

*C. H. Juliá* y *Angel R. Díaz,* abogados de la recurrente; *E. Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de los recurridos.

Sala integrada por su Presidente el Juez Asociado Señor Belaval y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La demandante y recurrente Isabel Antonia García López interpuso demanda en la Sala de San Juan del Tribunal Superior contra Juan, Alejandro y Manuel Méndez García, hermanos de José Méndez García el esposo ya fallecido de la demandante; contra los hijos habidos en el matrimonio, María Isabel, Rosa María, Aurora Margarita, José Víctor y Joaquín Raimundo Méndez García, a la vez herederos testamentarios de José Méndez, siendo todos mayores de edad, y contra Ferretería Méndez, Incorporada y el Secretario de Hacienda. [1] La demanda se tituló "Sobre Nulidad de Actuaciones, de Procedimientos, de Sentencias, de Traspasos e Inscripciones en el Registro, de Fideicomiso e inexistencia de donaciones; Nulidad de Transacción y Reivindicación de Participación Ganancial con sus rentas, beneficios e intereses". La controversia planteada en este recurso de revisión nos obliga a exponer en detalle las alegaciones.

En una primera causa de acción se alegó que la demandante y José Méndez contrajeron matrimonio el 15 de septiembre de 1929, el cual quedó disuelto por sentencia de divorcio de 16 de noviembre de 1943; que durante el matrimonio la sociedad legal de gananciales adquirió los siguientes bienes:

(A) Solar de 345 metros cuadrados en la calle Luis Moczó de Santurce.

(B) Solar de 385 metros cuadrados y edificación sito en la calle Egozcue de Santurce.

---

[1] Se incluyó al Secretario de Hacienda para que alegara cualquier derecho de contribuciones que tuviera relacionado con las transacciones de la demanda. El Secretario compareció rehusando intervenir.

(C) Condominio de una tercera parte en una finca compuesta de 1336.86 metros cuadrados en la calle San Agustín de Puerta de Tierra con un edificio de hormigón armado de cuatro plantas y un sótano; un segundo edificio de hormigón residencial-comercial, y once casas de madera dedicadas a vivienda y alquiler.

(D) Ochenta y cinco acciones comunes de la corporación Ferretaría Méndez, Inc., como continuadora de los negocios de la Sociedad mercantil Sobrinos de A. Méndez y Hnos., sita en el # 200 de la calle San Agustín de Puerta de Tierra. Se alegó que estas propiedades con sus rentas, beneficios e intereses constituyen el haber ganancial de la demandante y de José Méndez, libres de toda carga o gravamen, teniendo un valor total sin incluir rentas y beneficios, de $188,500, y que el interés de la demandante en ellos ascendía a $94,250, a la fecha de la disolución del matrimonio.

Que la demandante interpuso demanda de divorcio contra José Méndez el 25 de junio de 1942, Civil Núm. 40,794 de la anterior Corte de Distrito de San Juan, y desde ese momento los co-demandados Juan, Alejandro y Manuel Méndez García, junto con su esposo José Méndez, se confabularon entre sí para, por medios fraudulentos, ilegales y simulados, hacer desaparecer todos los bienes de la sociedad de gananciales, simulando deudas contra los mismos, embargándolos, ejecutándolos y apropiándoselos, ocultándolos, transfiriéndolos en fideicomiso secreto entre los confabulados, donándolos y traspasándolos, con el fin calculado de despojar como despojaron a la demandante de su participación en dichos bienes.

Que 31 días después de haber sido emplazado José Méndez de la demanda de divorcio, los co-demandados Alejandro y Manuel Méndez García en confabulación con su hermano José, ilegal y fraudulentamente y con el propósito de defraudar a la demandante, simularon la liquidación de la cuenta personal del socio José Méndez, en ese entonces esposo de la demandante, en la Sociedad mercantil Sobrinos de A. Méndez

y Hnos., simulando que eliminaban a su esposo de dicha sociedad y simulando que retenían los servicios del esposo de la demandante meramente como empleado de dicha mercantil con un sueldo de $150 mensuales, según escritura otorgada el 5 de octubre de 1942 ante el Notario Eduardo H. F. Dottin.

Que como cuestión de hecho el esposo de la demandante continuó siendo socio real y efectivo de la mercantil actuando como principal y gestor de la misma, con los mismos deberes, derechos y atribuciones originales sin que tuviera nunca el carácter de empleado; siendo su aparente separación de la sociedad falsa, simulada y nula, con el único fin de burlar a la demandante de sus derechos gananciales, y en las medidas provisionales durante el divorcio.

Que entre José Méndez y sus socios los co-demandados Alejandro y Manuel Méndez, existía un convenio secreto o pacto reservado consistente en que una vez liquidada la sociedad de gananciales volvería a aparecer el esposo adquiriendo sus derechos como socio de la mercantil de acuerdo con la escritura de constitución.

Que la sentencia de divorcio quedó final, firme y ejecutoria el 18 de noviembre de 1943, y 12 días después, el 30 de noviembre, José, Alejandro y Manuel Méndez García incorporaron la corporación Ferretería Méndez, Inc., transfiriendo, cediendo y traspasando, fraudulenta e ilegalmente, y con el fin calculado de defraudar en sus intereses a la demandante, los beneficios y el activo de la mercantil Sobrinos de A. Méndez y Hnos. a la nueva corporación Ferretería Méndez y recibiendo a cambio de dichos beneficios y activo certificados de acciones de dicha corporación.

Que José Méndez aportó a la corporación $7,500 por 75 acciones, y no sólo era falso el hecho de su separación de la sociedad mercantil sino que dichos $7,500 pertenecían y formaban parte del caudal ganancial. Posteriormente, y con haber procedente de la sociedad de gananciales, José Méndez adquirió 10 acciones adicionales en la corporación siendo la

demandante dueña de la mitad o 42 acciones y media, perteneciendo el resto a sus hijos co-demandados.

Que los demandados no han rendido cuentas a la demandante de dichas acciones, ni a sus hijos, y siendo albaceas y contadores partidores de la herencia de su difunto hermano José Méndez, ilegal y fraudulentamente, y con el fin de no descubrir la existencia de esas acciones a la demandante, no han rendido el informe de los bienes relictos al Secretario de Hacienda defraudando igualmente al Tesoro Público en el monto de la correspondiente contribución de herencia a pagarse.

Que el co-demandado Juan Méndez García, con el fin fraudulento de ocultar a la demandante el paradero y el monto de los bienes gananciales se ha negado a hacer el inventario de los bienes relictos al fallecimiento de su hermano José Méndez, parte de los cuales pertenecen a sus hijos sujetos a tutela testamentaria.

Una segunda causa de acción se relaciona con la finca marcada letra (B). A tal fin, se alegó en la demanda que siendo dueña la demandante y su esposo de la referida finca letra (B) constituyeron hipoteca sobre la misma el 6 de abril de 1938 por la cantidad de $2,000 a favor de Carlos F. Preston, obligándose a pagarlos a razón de $500 anuales a vencer el último plazo el 6 de abril de 1943.

Que al radicar la demandante la demanda de divorcio en 25 de junio de 1942 se habían satisfecho tres plazos de $500, y en 28 de octubre de 1942, pendiente el pleito de divorcio, y en el mismo mes en que se simuló su separación de la mercantil Sobrinos de A. Méndez, José Méndez, con dinero de la sociedad de gananciales, pagó a Preston el último plazo de $500 quedando la propiedad completamente libre; y que José y Juan Méndez se confabularon entre sí y con su amigo íntimo Aurelio Ortiz Meléndez y por escritura otorgada en San Juan ese día hicieron aparecer como que aún se adeudaban $1,500 a Preston y Preston cedió dicho crédito hipotecario de $1,500

a Ortiz Meléndez a sabiendas de que todo era simulado, con el fin fraudulento de perjudicar a la demandante en sus intereses.

Que en 9 de diciembre de 1942, sin estar vencido el crédito hipotecario, Ortiz Meléndez como dueño del crédito ejecutó el mismo por la supuesta suma de $1,500; que José Méndez no compareció a contestar la demanda y se vendió la finca letra (B) en pública. subasta adquiriéndola su hermano Juan Méndez por escritura de 25 de febrero de 1943.

Que a la fecha de la subasta José Méndez, como administrador de la sociedad de gananciales, tenía recursos y bienes suficientes para pagar la supuesta deuda de $1,500, rentas y grandes beneficios de la mercantil Sobrino de A. Méndez, que justificaron la imposición de una contribución sobre ingresos de $18,546.54.

Que tanto la cesión del crédito hipotecario como el procedimiento de ejecución y la adjudicación fueron actos simulados, falsos y fraudulentos de su entonces esposo ayudado por su hermano Juan Méndez y por Ortiz Meléndez, con el fin de disminuir el caudal de bienes gananciales, colocando la referida finca letra (B) fuera del mencionado haber conyugal.

Que después de la subasta y adjudicación de la referida finca letra (B) sita en la calle Egozcue, en 23 de febrero de 1943 José Méndez continuó en la posesión y dominio de la misma en concepto de dueño, arrendándola y cobrando las rentas hasta que falleció el 28 de octubre de 1948.

Que desde que se radicó la demanda de divorcio en junio de 1942 el esposo y su hermano Juan Méndez planearon y crearon un fideicomiso secreto en virtud del cual José, valiéndose de todos estos actos simulados y fraudulentos, transmitió como fideicomitente la finca letra (B) a Juan Méndez como fiduciario para beneficio de su hija Rosa María Méndez como fideicomisaria, a serle entregada la propiedad un año después de llegar a su mayoría de edad el menor de los hijos, lo cual se hizo con el fin de ocultar esta propiedad ganancial y de-

fraudar a la demandante en una mitad de su valor y sus rentas.

Que en cumplimiento del referido fideicomiso secreto Juan Méndez traspasó la propiedad letra (B) a Rosa María Méndez, en virtud de escritura de 14 de abril de 1960 simulando una donación entre el fiduciario y la fideicomisaria, a pesar de constarle a ambos de personal conocimiento que la supuesta donación era inexistente y hecha con el único fin de privar a la demandante de su mitad ganancial en esta propiedad, siendo nulos en derecho el fideicomiso y la donación.

La tercera causa de acción se relaciona con la finca letra (A). Alegó la demandante que esta propiedad, sita en la calle Luis Moczó de Santurce, fue adquirida durante el matrimonio con su edificación.

Que en 5 de febrero de 1943 el co-demandado Juan Méndez García radicó una acción en la Corte de Districto de San Juan, Civil Núm. 42,626, en supuesto cobro de dinero contra su hermano José Méndez, entonces esposo de la demandante, alegando Juan Méndez que se le adeudaba $1,687.10.

Que José Méndez fue emplazado y no contestó, dejándose anotar rebeldía y registrar sentencia en 2 de marzo de 1943, y en ejecución de dicha sentencia se vendió en subasta el 4 de mayo de 1943 la referida finca letra (A), en $1,100 adquiriéndola el propio demandante Juan Méndez, según escritura de Venta Judicial otorgada en esa misma fecha.

Que tanto la reclamación, como el procedimiento seguido, la ejecución, subasta y adjudicación a favor de Juan Méndez, fueron hechos falsos, nulos e inexistentes porque era falsa la referida reclamación por no existir tales deudas, y de haber existido, habían sido contraídas por José Méndez con cargo a la sociedad de gananciales después de iniciado judicialmente el divorcio, sin autorización del Tribunal, y por existir una confabulación fraudulenta entre José Méndez y su hermano para crear un aparente crédito, demandar a espaldas de la demandante, no defenderse José y permitir que se anotara su

rebeldía y se registrara sentencia y se subastara y ejecutara la propiedad a favor de su propio hermano, con el fin de sacar este inmueble de la sociedad de gananciales, siendo la venta por un precio irrisorio de $1,100 cuando el valor de la propiedad era de $65,000; que aún después de la subasta y adjudicación el esposo de la demandante continuó en la posesión real y efectiva de dicho inmueble hasta el día de su muerte en 21 de octubre de 1948, siendo la propiedad alquilada por él y cobrando él sus rentas como dueño.

Que entre su entonces esposo y su hermano Juan Méndez planearon y crearon un fideicomiso secreto en virtud del cual y valiéndose de estos actos simulados y fraudulentos, José transmitió la propiedad marcada con la letra (A) sita en la calle Luis Moczó, a su hermano Juan Méndez como fiduciario para que éste la tuviera en fideicomiso para los hijos codemandados María Isabel, Aurora Margarita, José Víctor y Joaquín Raimundo Méndez, fideicomisarios, y para que les hiciera entrega de dicho fideicomiso después de llegar a la mayoría de edad el menor de los hijos, todo ello con el fin de ocultar esta propiedad ganancial sacándola del caudal y defraudando así a la demandante en la mitad de su valor y sus rentas.

Que en cumplimiento de ese fideicomiso secreto el codemandado Juan Méndez traspasó dicha propiedad a los mencionados fideicomisarios simulando una donación a pesar de que a todos ellos les constaba de propio y personal conocimiento que la donación era inexistente, hecha con el fin fraudulento de privar a la demandante de su mitad ganancial en esos bienes, y nula en derecho.

En una cuarta causa de acción alegó la demandante que el 5 de febrero de 1943, el mismo día y a la misma hora en que radicó el anterior pleito, el co-demandado Juan Méndez interpuso demanda en contra de su entonces esposo José Méndez en la Corte de Distrito de San Juan, Civil Núm. 42,625, alegando la existencia de una cuenta corriente de mercaderías

y partidas de dinero que después de varios abonos, liquidaba
en $2,109.87. El allí demandado y esposo de la demandante
fue emplazado, no contestó la demanda, se le anotó la rebeldía
y se dictó sentencia en su contra; y en ejecución de dicha
sentencia el alguacil del Tribunal expidió un cheque contra
los fondos que tenía en su poder pertenecientes a la sociedad
de gananciales entre la demandante y José Méndez, por la
suma de $1,210.09, a favor del allí demandante Juan Méndez,
apropiándose éste de su importe.

Que este procedimiento fue ilegal e inexistente porque las
supuestas deudas alegadas en dicha demanda nunca exis-
tieron, eran falsas y simuladas, con el fin de defraudar a la
demandante y ser deudas supuestamente contraídas después
de iniciada judicialmente la acción de divorcio, sin autoriza-
ción del Tribunal; y la sentencia nunca fue notificada al
demandado ni a la demandante quien entonces era su esposa.

Que siendo nulos e inexistentes dichos procedimientos la
cantidad de $1,210.09 recibidos y apropiados por Juan
Méndez debían restituirse, con sus intereses legales desde
el 23 de junio de 1943, al haber ganancial.

La quinta causa de acción se relaciona con la finca letra
(C). Se alegó en la demanda que esta propiedad fue adquirida
por la sociedad de gananciales en 1933 en cuanto a un con-
dominio de una tercera parte.

Que en 15 de agosto de 1940 los condueños constituyeron
hipoteca sobre la misma en garantía de un pagaré hipotecario
al portador por la suma de $22,000 vencedero el 15 de agosto
de 1944; que el referido pagaré hipotecario al portador estuvo
siempre, desde su otorgamiento hasta su cancelación, en poder
de José, Alejandro y Manuel Méndez, y como cuestión de
hecho tal hipoteca no existió y el gravamen fue puramente
"académico", siendo el pagaré hipotecario propiedad de los
mismos dueños de la finca hasta el 21 de julio de 1947 en que
quedó totalmente cancelado.

Que en 22 de noviembre de 1943, en el caso de divorcio, el entonces abogado de la demandante firmó con el abogado de José Méndez una estipulación de transacción sobre la división y liquidación de la sociedad de gananciales habida entre la demandante y su esposo, a virtud de la cual se daba por liquidada a satisfacción de ambas partes, la referida sociedad de gananciales, estipulación que fue aprobada por la Corte el 2 de diciembre de 1943.

Que a la fecha de la disolución del matrimonio y al firmarse la referida estipulación, y al ser aprobada por la Corte, José Méndez hizo creer al abogado de la demandante y a ella misma que no existían otros bienes en el caudal ganancial que no fuera el condominio de una tercera parte de la propiedad localizada en la calle San Agustín en la forma en que dicha propiedad aparecía descrita en el Registro; que José Méndez le hizo creer a ella y a su abogado que ese condominio de una tercera parte estaba real y legítimamente sujeto y afecto al gravamen en garantía del pagaré hipotecario de $22,000 antes mencionado, y les hizo creer que la participación de la demandante y de su esposo en esa propiedad, deducido el crédito hipotecario, era solamente de $5,000, induciendo de esa manera fraudulenta, ilegal y dolosamente a la demandante y a su abogado a transigir sus derechos por la cantidad de $3,000 que alegó José era la suma justa y razonable del valor de la participación de la demandante, constándole que todo eso era falso.

Que la referida estipulación y transacción es nula, ineficaz e inexistente porque José Méndez, con palabras o maquinaciones insidiosas hizo creer al abogado de la demandante que no existían otros bienes gananciales a esa fecha excepto el condominio de una tercera parte de la propiedad descrita bajo la letra (C), teniendo personal conocimiento de que existían los bienes descritos bajo las letras (A), (B) y (D); porque con palabras o maquinaciones insidiosas Méndez hizo creer a la demandante que la propiedad sita en la calle San

Agustín era la que constaba en el Registro de la Propiedad, sabiendo que en adición existían en la misma otro edificio de hormigón, residencial y comercial, y once casas adicionales dedicadas a vivienda y alquiler; porque hizo creer a la demandante y a su abogado que era real, cierto y legítimo el gravamen de $22,000 que afectaba dicha propiedad, constándole que como cuestión de hecho tal gravamen no existía por estar el pagaré hipotecario en sus manos y las de sus hermanos a la fecha de la transacción; porque hizo creer a la demandante y a su abogado que la participación de los esposos en dicho condominio tenía solamente un valor de $5,000, constándole a él que valía $56,000; porque hizo creer a la demandante que la sociedad de gananciales ya no era dueña de las otras propiedades ni de las 85 acciones de la corporación Ferretería Méndez, y porque el consentimiento prestado en la transacción por la demandante estuvo viciado por el error sobre la substancia de la cosa objeto del contrato y viciado por el dolo empleado por José Méndez.

En su sexta causa de acción alegó la demandante que la Ferretería Méndez había tenido ganancias y beneficios a distribuirse por un monto de $38,630.54 entre los años 1944 a 1957, correspondiéndole beneficios a la demandante en proporción a 42-1/2 acciones que le correspondían.

Que la propiedad letra (B) sita en la calle Egozcue de Santurce produjo rentas del 18 de noviembre de 1943 al 30 de mayo de 1960 en la suma de $17,998.64 de los cuales la mitad corresponde a la demandante con sus intereses.

Que la propiedad descrita bajo la letra (A) produjo rentas en la cantidad de $72,890 desde el 18 de noviembre de 1943 al 30 de mayo de 1960 correspondiendo a la demandante la mitad de dicha suma con sus intereses.

Que la propiedad descrita bajo la letra (C) sita en la calle San Agustín ha producido rentas en el monto de $59,280 desde el 18 de noviembre de 1943 al 31 de mayo de 1960

correspondiendo a la demandante la mitad de dicha suma con sus intereses.

Alegó la demandante que ella no ha renunciado sus derechos gananciales sobre esos bienes, sus beneficios e intereses, y pidió sentencia a tono con lo reclamado en las distintas causas de acción declarando que en este caso hay un estado de fraude como consecuencia del cual se le despojó de su participación ganancial en los bienes habidos en el matrimonio de ella con José Méndez, y los demás pronunciamientos pertinentes.

Contra la anterior demanda los demandados comparecieron a solicitar que se dictara sentencia sumariamente a su favor, basándose en ciertos documentos que acompañaron a su solicitud. El primero de dichos documentos es una declaración jurada del co-demandado Juan Méndez García en donde expuso.—"con el propósito de demostrar que no hay controversia real en cuanto a ningún hecho material"—que para la fecha de la transacción en relación con la liquidación de los bienes gananciales habidos en el matrimonio de la demandante con José Méndez, "la demandante sabía cuáles eran los bienes existentes de la sociedad de gananciales, y teniendo ese conocimiento fue que aceptó libre y voluntariamente la transacción mencionada". Que para dicha fecha "la demandante sabía que la mayoría de las fincas descritas en la primera causa de acción ya no eran de la sociedad de gananciales". Que para dicha fecha, "la demandante sabía que José Méndez García no era dueño de acciones algunas de la Ferretería Méndez, Inc." Que las maquinaciones y confabulaciones alegadas por la demandante en esta demanda "habían sido alegadas por ella con anterioridad a la transacción, y a pesar de eso convino en y aceptó la transacción sobre liquidación de la sociedad de gananciales".

Se unió como segundo documento en apoyo de la moción sobre sentencia sumaria la comparecencia de las partes en el pleito de divorcio en relación con la liquidación de los bienes

ganaciales. En esta comparecencia se expuso: "que la sociedad de ganaciales existente entre las partes comparecientes ha sido debidamente liquidada y que como consecuencia de dicha liquidación la demandante-contra-demandada ha recibido a su satisfacción y contento de manos del demandado-contra-demandante la suma de $3,000.00 que es la participación justa y razonable que corresponde a dicha demandante-contra-demandada por el concepto de ganaciales dicho."

En 2 de diciembre de 1943 la Corte dictó una orden con vista a dicha comparecencia teniendo y dando por cumplida la sentencia de divorcio dictada en 16 de noviembre de 1943 y por liquidada a satisfacción de las partes la sociedad de ganaciales que existió entre las mismas a virtud del matrimonio que se disolvió por la referida sentencia.

El tercer documento unido a la moción de sentencia sumaria es un escrito solicitando resolución *nunc pro tunc* de 3 de julio de 1947, en donde las partes hicieron constar, refiriéndose a la comparecencia de 22 de noviembre de 1943, que al recibir la demandante la suma de $3,000 había renunciado a favor del demandado y contra-demandante José Méndez, todos los derechos que pudieran corresponderle sobre los bienes muebles e inmuebles existentes a la fecha de la disolución del matrimonio y pertenecientes a la sociedad de ganaciales, a fin de inscribir a favor de aquél, el condominio de una tercera parte de la propiedad de San Agustín. En 7 de julio de 1947 la Corte dictó resolución *nunc pro tunc* ordenando la inscripción de dicho condominio en el Registro a favor de José Méndez.

La demandante se opuso a la solicitud de sentencia sumaria, y en declaración ahora bajo juramento, alegó los actos de fraude, simulación e inexistencia que expuso en la demanda. Acompañó varios documentos con miras a sostener hechos alegados por ella, entre ellos, documentos radicados por José Méndez ante la Oficina de Administración de Precios declarando en 1946 la inscripción de viviendas de alquiler como

dueño en la propiedad sita en la calle Luis Moczó y documentos similares en cuanto a la propiedad de la calle Egozcue; las cláusulas de incorporación de Ferretería Méndez, Inc., de donde surge que José Méndez aportó un capital inicial de $7,500 en acciones.

Con los anteriores elementos de juicio, la Sala sentenciadora dictó sentencia sumariamente declarando sin lugar la demanda en todas sus causas de acción. Dijo la Sala:

"La solicitud de sentencia sumaria se basa en la doctrina de cosa juzgada (res judicata) por transacción habida entre la demandante y su ex-esposo José Méndez García el 22 de noviembre de 1943, dentro del expediente de divorcio ante este Tribunal, civil número 40,794 y además en la sentencia dictada por este Tribunal el 10 de agosto de 1943 en el caso civil número 42,966, sobre Nulidad de Procedimiento Ejecutivo Hipotecario.(²)

## I

En cuanto a la segunda causa de acción particularmente se refiere, la Sala sentenciadora concluyó que la cosa estaba juzgada por la sentencia dictada en el referido pleito número 42,969. Su fallo fue correcto.

En 16 de marzo de 1943 la aquí demandante Isabel García López interpuso demanda en la entonces Corte de Distrito de San Juan, caso número 42,969, contra Eulalio Ortiz Meléndez, Juan Méndez García y José Méndez García, sobre Nulidad de procedimiento Ejecutivo Hipotecario, Reivindicación del Inmueble Ejecutado y Daños y Perjuicios. Como primer fundamento de la primera causa de acción alegó ella que la sociedad conyugal con su esposo José Méndez era dueña desde el 1937 de la propiedad de 385 metros cuadrados de la Calle Egozcue (finca letra (B) de la presente demanda); que en abril de

---

(²) El caso es el 42,969. Ni en la moción de sentencia sumaria ni en los documentos unidos a la misma se invoca el pleito número 42,969, y la sentencia dictada en el mismo. En su opinión el Juez expuso que en la vista de la moción las partes presentaron prueba. Debemos presumir que este pleito fue prueba que tuvo ante sí el Juez sentenciador.

1938 su esposo recibió en préstamo de Carlos Preston $2,000 a pagarse en cinco años en plazos de $500, a vencer el último el 6 de abril de 1943; que este préstamo se garantizó con hipoteca sobre la finca anteriormente mencionada; que en 28 de octubre de 1942 se hizo una cesión de dicho crédito hipotecario a favor de Eulalio Ortiz Meléndez haciéndose constar que la hipoteca estaba reducida a $1,500; que en diciembre de 1942 Ortiz Meléndez ejecutó la hipoteca vendiéndose la finca en subasta siendo adquirida por Juan Méndez García; y que tanto la cesión del crédito hipotecario como el procedimiento ejecutivo fueron actos simulados y falsos del allí demandado José Méndez, ayudado por los otros demandados, para disminuir el caudal de bienes gananciales habidos en el matrimonio de la demandante con José Méndez, colocando así la referida finca fuera del haber conyugal; que José Méndez había pagado la totalidad de la hipoteca y valiéndose de su íntimo amigo Eulalio Ortiz se simuló falsamente una cesión del crédito y se otorgó falsa y simuladamente una escritura de cesión, y que Ortiz, actuando de acuerdo y en combinación con José Méndez, llevó el simulado procedimiento ejecutivo hipotecario, todo ello para sacar del haber ganancial el referido inmueble.

Los allí demandados negaron los hechos. El caso fue a juicio y en 10 de agosto de 1943 la entonces Corte de Distrito de San Juan dictó sentencia declarando sin lugar la demanda. Sobre las alegaciones de falsedad, simulación y confabulación de su esposo con las otras personas mencionadas, la Corte de Distrito hizo conclusiones específicas en torno a las mismas al desestimar la demanda.

Basta comparar las causas de acción y las alegaciones de ambos pleitos para que sea obvio que en lo referente a la segunda causa de acción del actual litigio procedía dictar sentencia sumariamente a base de cosa ya juzgada. Fuera o no correcto el fallo anterior—contra la presunción de que la

cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.—Art. 1204 del Código Civil, ed. 1930.

## II

Las demás causas de acción de este recurso envuelven otras consideraciones. Dijo la Sala:

"En cuanto a las demás causas de acción en la presente demanda también procede se dicte sentencia sumaria basada en la doctrina de cosa juzgada ya que la demandante transigió y liquidó con fecha 22 de noviembre de 1943, sus derechos en la sociedad de gananciales habida con su esposo, mediante escrito sometido a la aprobación del Tribunal, y aprobado por éste el 2 de diciembre de 1943, dentro del expediente de divorcio civil número 40,794.

"Dichas transacción y liquidación las hizo la demandante a pesar de que dentro de ese mismo expediente y del expediente civil número 42,966 y con anterioridad a la fecha de la transacción, repetidamente le imputaba a su entonces esposo actos fraudulentos y confabulaciones con sus otros hermanos, aquí demandados, para privarla de su participación en los bienes de la sociedad de gananciales. Todos los actos fraudulentos y confabulaciones y actos de mala fe alegados en la presente demanda, los había ya alegado la demandante en los expedientes mencionados, con anterioridad a la sentencia de divorcio."

Recientemente, en *Roth* v. *Lugo*, 87 D.P.R. 386 (1963), exponiendo por el Tribunal tuvimos ocasión de puntualizar ciertos principios normativos que deben regir la concesión de una sentencia sumariamente dictada, y que conducen al criterio básico de que no debe dictarse sumariamente tal sentencia a menos que el Tribunal tenga ante sí, a través del mecanismo que provee la Regla 36 de Procedimiento Civil, toda la verdad de los hechos esenciales como si los hubiere hallado probados después de dirimirlos en un juicio, y sólo le reste aplicar la norma de derecho indicada. No puede el Tribunal tener ante sí toda la verdad de los hechos a través de este mecanismo, mientras los mismos estén controvertidos, ya que distinto a cuando se sustancian en juicio oral, al Tribunal no les es permisible bajo la Regla dirimir conflictos en-

tre esos hechos, ni puede pesarlos o evaluarlos a no ser para el fin de determinar si hay o no una genuina controversia sobre los mismos, pero no para adjudicar ahí entonces tal controversia, de haberla.

La expresión que hicimos en *Roth* tiene entera vigencia en el caso de autos. Existen, sin embargo, algunas normas adicionales que allí no mencionamos y que se aplican mejor a una situación de hecho como la del presente recurso.

■ Si bien la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular, de los que se rigen por las Reglas de Procedimiento, hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de *"affidavits"* o deposiciones. Este caso es típico de una de esas controversias, donde hay elementos subjetivos envueltos, y de intención y propósitos mentales, donde el factor de *credibilidad* juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. Cf. *Colby* v. *Klune*, 178 F.2d 872 (2d Cir. 1949); *Bozant* v. *Bank of New York*, 156 F.2d 787 (2d Cir. 1946); *Subin* v. *Goldsmith*, 224 F.2d 753 (2d Cir. 1955), y casos ahí citados; *Arnstein* v. *Porter*, 154 F.2d 464 (2d Cir. 1946); *Sarnoff* v. *Ciaglia*, 165 F.2d 167 (3d Cir. 1947); *Firemen's Mutual Ins. Co.* v. *Aponaug Mfg. Co.*, 149 F.2d 359 (5th Cir. 1945); *Arenas* v. *United States*, 322 U.S. 419; *Sartor* v. *Arkansas Natural Gas Corp.*, 321 U.S. 620; *Dulansky* v. *Iowa-Illinois Gas & Electric Co.*, 191 F.2d 881 (8th Cir. 1951); *Smith, etc.* v. *Schenley Distillers, Inc.*, 190 F.Supp. 586; *United States* v. *Kansas Gas & Electric Co.*, 287 F.2d 601 (10th Cir. 1961); *Loudermilk* v. *Fidelity & Casualty Co. of New York*, 199 F.2d 561 (5th Cir. 1952); *Eccles* v. *Peoples Bank*, 333 U.S. 426; *Kennedy* v. *Silas Mason Co.*, 334 U.S. 249 *Alvado* v. *General Motors Corp.*,

229 F.2d 408 (2d Cir. 1955), p. 412; *Alabama Great So. R. Co.*, v. *Louisville & Nashville R. Co.*, 224 F.2d 1 (5th Cir. 1955).

■ Es palpable el hecho de que a través de la moción solicitando sentencia sumaria y los documentos en apoyo de la misma, y de la oposición contraria y sus documentos quedó en pie en este caso una abierta y profunda controversia de hecho que impedía el que se despachara el litigio sumariamente sin un juicio oral.

■ La Sala sentenciadora, por otra parte, creyó entender que todos estos hechos ya estaban juzgados, y para llegar a esa conclusión usó la transacción habida en el pleito de divorcio. Precisamente es esa transacción que aceptó como buena la liquidación de la sociedad conyugal la que se impugna en el pleito a base de fraude, dolo, simulación, engaño y falsedad. No puede la misma constituir la razón en derecho para concluir que en virtud de ella ya se juzgó la presente cuestión litigiosa en que la demandante reclama su parte ganancial.

■ En cuanto a que con anterioridad a la transacción la demandante había hecho iguales imputaciones a José Méndez, el hecho, ni crea una situación de cosa juzgada ni contradice su posición en este pleito. Antes bien, tiende a fortalecerla. El récord del pleito civil 40794 demuestra que en ocasión de solicitar una mayor pensión alimenticia durante el proceso la demandante hizo referencia al hecho de que el gravamen hipotecario de $22,000 sobre la propiedad de San Agustín era inexistente, a los efectos de las rentas que su esposo recibía de la misma, y alegó que la separación de su esposo de la mercantil era nula y simulada y que se hizo para burlar los derechos de la demandante en cuanto a sus alimentos y en la liquidación de los bienes gananciales. Según el expediente de divorcio, no hubo acción en cuanto a dicha pensión de alimentos. La demandante podría ser confrontada en un juicio con tales alegaciones a los efectos de su credibilidad en cuanto a si

ignoraba o no esos hechos al hacer la transacción, pero ni dichas alegaciones, ni la única sentencia dictada en ese pleito disolviendo el vínculo matrimonial crean tampoco la condición de cosa juzgada en este litigio.

*Se confirmará la sentencia sumariamente dictada en lo referente a la segunda causa de acción de la demanda, por razón de cosa juzgada, y se revocará en cuanto a todas las demás. Los autos serán devueltos a la Sala sentenciadora para que se conteste la demanda en sus méritos y se proceda a un juicio, y para cualesquiera otros procedimientos no incompatibles con esta opinión.*