Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ANTONIO MALDONADO CANCEL<br><br>Apelante<br><br>V.<br><br>GLOBUS MEDICAL NORTH AMERICA, INC., ET AL.<br><br>Apelada | KLAN202500286 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Civil Número: MZ2023CV01326<br><br>Sobre:<br>Derecho Laboral, Procedimiento Sumario. Ley Núm. 2 de 17 de octubre de 1961, según enmendada. |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, la Jueza Romero García y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de julio de 2025.

Comparece el Sr. Antonio Maldonado Cancel (señor Maldonado Cancel o "parte apelante"), mediante un recurso de apelación solicitando la revisión de la *Sentencia* emitida el 25 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante el referido dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por Globus Medical North America, Inc., et al. (Globus Medical o "parte apelada").

Por los fundamentos que expondremos a continuación, *revocamos* y *confirmamos* en parte la Sentencia apelada.

I.

El Sr. Maldonado Cancel instó una *Querella* contra su antiguo patrono, Globus Medical, el 1 de agosto de 2023, al amparo del

---

[1] Mediante Orden Administrativa 2025-078 se asignó a la Hon. Glorianne Lotti Rodríguez en sustitución del Hon. Waldemar Rivera Torres.

Número Identificador

SEN2025 _____

procedimiento sumario laboral, según dispone la Ley Núm. 2 del 17 de octubre de 1961, conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales. En la *Querella,* el Sr. Maldonado Cancel alegó que laboró como *Associate Spine Specialist* para Globus Medical desde el 18 de noviembre de 2009 hasta el 28 de marzo de 2023, fecha en que fue despedido. Adujo que fue despedido injustificadamente en violación a la Ley Núm. 80 del 30 de mayo de 1976, según enmendada (29 LPRA § 185 *et seq.*); además que se le adeudan vacaciones, bono de navidad, comisiones y reembolso de gastos.

El 8 de agosto de 2023, Globus Medical presentó su contestación a la *Querella.* En síntesis, alegó que, la *Querella* no expone hechos que justifiquen la concesión de un remedio, que el despido fue justificado debido a que el señor Maldonado Cancel violó normas fundamentales de ética y honestidad, por lo cual no tiene derecho a remedio alguno al amparo de la Ley Núm. 80-1998. Además, adujo que, se le pagaron todas las vacaciones acumuladas, que no tiene derecho a los tres (3) años de bono de navidad que reclama, que no se adeuda suma alguna por reembolso de gastos y que se le pagaron todas las comisiones adeudadas que fueron cobradas de equipo y por asistir en la instalación de los productos.

El 16 de febrero de 2024, el señor Maldonado Cancel presentó una *Moción de Desistimiento Voluntario Parcial en Cuanto al Bono del Año 2022 Reclamado en la Segunda Causa de Acción de la Querella.* En resumen, sostuvo que, Globus Medical acordó pagar el Bono de Navidad correspondiente al año 2022 en la cantidad de $300.00, más la penalidad de $300.00, para un total de $600.00. Expresó que su reclamo de bonos por los años 2020 y 2021 se mantiene. El 21 de febrero de 2024, notificada al día siguiente, el foro primario dictó una *Orden* declarando Ha Lugar el desistimiento.

El 2 de abril de 2024, el señor Maldonado Cancel presentó una *Querella Enmendada*. En síntesis, reclamó el pago de liquidación de los días de vacaciones acumuladas equivalentes a $6,922.38. Con la compensación adicional que dispone la Ley Núm. 180-1998, *supra*, para un total de $13,844.76. Asimismo, reclamó el pago de $600.00 en concepto de bono anual correspondientes a los años 2020 y 2021, más las penalidades dispuestas por la Ley Núm. 148-1969, para un total de $1,200.00.

A su vez, reclamó el pago de una suma no menor de $100,000.00 por concepto de Salarios y Comisiones de ventas no pagadas. En particular, alegó que como parte de su compensación mientras trabajó para Globus Medical, devengaba salarios a razón de $3,333.00 mensuales, más un dos porciento (2%) de comisiones de ventas. Por último, reclamó la cantidad de $75,264.90 por concepto de mesada conforme a la Ley Núm. 80-1976, y un 25% de honorarios de abogado sobre las cantidades obtenidas por los conceptos esbozados. En cuanto al reclamo de reembolso de gastos, este no fue incluido.

El 12 de abril de 2024, Globus Medical contestó la *Querella Enmendada*. En esencia, negó las alegaciones y adujo que el despido fue justificado. Además, sostuvo que no adeuda cantidad alguna en concepto de vacaciones, prescripción de los reclamos de bono, pago de todas las comisiones generadas por ventas cobradas cónsono con las políticas de Globus Medical. También, alegó afirmativamente que todas o pate de las reclamaciones están prescritas.

Luego de varios trámites procesales, el 26 de agosto de 2024, Globus Medical presentó una *Moción en Solicitud de Sentencia*

*Sumaria* en la cual propuso 82 hechos incontrovertidos y el derecho aplicable con el fin de obtener la desestimación de la *Querella*.[2]

El 30 de septiembre de 2024, el señor Maldonado Cancel presentó una *Moción sobre Desistimiento Voluntario Parcial en cuanto a la Cuarta Causa de Acción de la Querella Enmendada.* Dicha causa de acción versa sobre un reclamo por despido injustificado al amparo de la Ley Núm. 80-1976. En igual fecha, el señor Maldonado Cancel solicitó una prórroga para presentar su oposición a la solicitud de sentencia sumaria, la cual fue concedida.

El 1 de octubre de 2024, el foro recurrido emitió Sentencia Parcial, "decretando el archivo de la Cuarta Causa de Acción de la Querella Enmendada sobre Despido Injustificado, Con Perjuicio. Esto sin especial condena de costas, gastos ni honorarios de abogado".[3]

El 31 de octubre de 2024, el señor Maldonado Cancel solicitó una prórroga adicional. El 1 de noviembre de 2024, notificada el 6, el foro *a quo* emitió una *Orden* en la que concedió al señor Maldonado Cancel un término de quince (15) días para presentar su oposición a la solicitud de sentencia sumaria.

El 3 de diciembre de 2024, Globus Medical presentó una *Moción Solicitando que la Solicitud de Sentencia Sumaria Parcial se de Por No Opuesta,* ya que no se radicó oposición en el término dispuesto por el tribunal. El 13 de diciembre de 2024, el foro primario declaró Ha Lugar la referida moción.[4]

El 25 de marzo de 2025, notificada el mismo día, el Tribunal de Primera Instancia dictó *Sentencia Sumaria.*[5] A continuación,

---

[2] Junto a la *Moción Solicitando Sentencia Sumaria*, Globus Medical presentó los siguientes documentos como anejos: (1) Deposición de Antonio Maldonado Cancel, (2) Declaración Jurada de Nathaniel Morris, Senior Sale Analyst de Globus, (3) Declaración Jurada de Francisco Martínez Calderón, y (4) Declaración Jurada de Gladstone Philip.
[3] Véase, SUMAC, a la entrada 54.
[4] Véase, SUMAC, a la entrada 64.
[5] Apéndice 6 del recurso, págs. 333-340.

transcribimos íntegramente las determinaciones de hechos sobre las que basó su dictamen.

> 1. Globus es una empresa que se dedica, entre otras cosas, a la manufactura de artefactos ("devices") médicos de alta tecnología para uso humano, implantes, instrumentos e imágenes y robótica para procedimientos quirúrgicos.
> 2. El querellante fue contratado por Globus y comenzó el 18 de noviembre de 2009.
> 3. Durante todo su tiempo de empleo se desempeñaba en la posición de "*Associate Spine Specialist*"
> 4. El querellante fue despedido efectivo el 28 de marzo de 2023.
> 5. Parte de la compensación del querellante era una cantidad mensual fija de salario de $3,333.00 que recibía todos los meses, independientemente de cuánto trabajo desempeñara.
> 6. Otro componente de compensación era comisiones de 2% de la cuantía de ventas hechas en Puerto Rico.
> 8. Desde el principio la compañía le pagaba al querellante la comisión cuando cobraba por lo que el querellante estaba vendiendo.
> 9. El querellante reclama Bono de Navidad adeudado por los tres años anteriores a su despido.
> 10. Globus pagó $600.00 por el bono correspondiente al año 2022, incluyendo penalidad y honorarios de abogado, y el querellante desistió de dicho reclamo.
> 11. Para el 2022 y 2021, Globus contaba con menos de 15 empleados en Puerto Rico.
> 13. Para el período entre marzo de 2023 y enero de 2020, al querellante se le pagaron $33,740.00 en comisiones por ventas cobradas.[6]

El foro primario declaró No Ha Lugar la *Querella* presentada por el señor Maldonado Cancel. Sin embargo, debido a la admisión de Globus Medical, "de adeudarle $818.00 **en comisiones correspondientes a las ventas generadas por el querellante en marzo de 2023 que fueron <u>cobradas</u>**, se le [ordenó] a pagar al querellante por este concepto $1,636.00, incluyendo penalidad, y 25% de honorarios de abogado ascendentes a $409.00". (Énfasis nuestro).

Inconforme con dicha determinación, el 4 de abril de 2025, el señor Maldonado Cancel compareció ante nosotros mediante el

---

[6] Se aclara que la secuencia numérica del texto original omite los números 7 y 12. El Tribunal de Primera Instancia expresó: "este Tribunal acoge los hechos anteriores propuestos por la parte querellada como hechos materiales que no están en controversia [...]".

recurso de apelación de epígrafe y planteó la comisión de los siguientes errores:

> **Primer señalamiento de error:**
> **Erró el TPI al acoger la Moción en Solicitud de Sentencia Sumaria presentada por la parte querellada-apelada y dictar Sentencia Sumaria existiendo hechos esenciales y sustanciales en controversia, los cuales ameritan la concesión de un juicio en su fondo.**
> **Segundo señalamiento de error:**
> **Erró el TPI al dictar Sentencia Sumaria acogiendo una solicitud de sentencia sumaria <u>insuficiente</u>, privando al Querellante-Apelante de su día en corte.**

El 2 de mayo de 2025, Globus Medical presentó su *Oposición a la Apelación de Globus Medical North America, Inc.* Sostuvo, entre otros planteamientos, que el señor Maldonado Cancel tiene el peso de la prueba en cada una de las reclamaciones. Alegó que la reclamación para los años 2020 y 2021 están prescritas conforme a la Ley Núm. 4-2017. Afirmó que el bono correspondiente al año 2022 fue debidamente satisfecho. Respecto al reclamo de salarios/comisiones, adujo que al señor Maldonado Cancel se le pagaron las comisiones adeudadas a base de ventas cobradas desde el principio de su empleo en el 2009. Arguyó que el foro primario "correctamente determinó que el querellante incurrió en incuria, y al no hacer nada, perdió su derecho al reclamo que hace". En cuanto al reclamo de vacaciones, alegó que el señor Maldonado Cancel disfrutó de todos sus beneficios y que se le pagó por ellos.

Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia aplicables, resolvemos.

## II.

## A.

Como sabemos, la sentencia sumaria es un mecanismo procesal provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, cuyo fin es proveer una solución justa, rápida y económica de los litigios. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202

DPR 281, 290 (2019); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). A tenor, dicho mecanismo procesal permite que un tribunal, disponga parcial o totalmente de litigios civiles en aquellos casos en los que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). La sentencia sumaria procede cuando "no existen controversias *reales* y *sustanciales* en cuanto a *los hechos materiales,* por lo que lo único que queda por parte del poder judicial es aplicar el Derecho". *Meléndez González et al. v. M. Cuebas, supra*, pág. 109 (citando a *Oriental Bank v. Perapi et al.*, 192 DPR 7, (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010)).

Al interpretar la precitada Regla el Tribunal Supremo ha expresado que debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *E.L.A. v. Cole*, 164 DPR 608, 625 (2005). De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria [...] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Por lo que, no deberá dictar sentencia sumaria cuando: 1) existen hechos materiales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra, supra*, pág. 757; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

Al atender la moción de sentencia sumaria, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole, supra*, pág. 626. No obstante, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática". *Mun. de Añasco v. ASES*, 188 DPR 307, 327 (2013) (citando a Córdova *Dexter v. Suncn. Ferraiuoli*, 182 DPR 541, 556 (2011)). A su vez, corresponde al juzgador actuar guiado por la prudencia y ser consciente de que su determinación podría implicar que se prive a una de las partes de su "día en corte", elemento esencial del debido proceso de ley. *León Torres v. Rivera Lebrón, supra*, pág. 44.

Cónsono con lo anterior, nuestro más alto foro ha resuelto que, existen litigios y controversias que "por su naturaleza no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas". *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001) (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Dicho foro ha identificado como posibles controversias de este tipo aquellas que incluyen: "elementos subjetivos, es decir, aquellas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa 'en gran parte de lo que extraiga del contrario en el curso de un juicio vivo'. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

En lo pertinente, la Regla 36 de Procedimiento Civil, *supra*, impone unos requisitos de forma con los cuales hay que cumplir al momento de promover una solicitud de sentencia sumaria, a saber:

(1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Si la parte promovente incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas, supra,* pág. 111.

Asimismo, la parte que se opone a una sentencia sumaria tiene que cumplir con los requisitos de la precitada Regla 36, *supra. Oriental Bank v. Caballero García, supra,* pág. 680. En otras palabras, la parte que desafía dicha solicitud no podrá descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra,* pág. 43. Así pues, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe "puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra". *Id.,* pág. 44. Entiéndase que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *Id.* De lo contrario, corre el riesgo de que se dicte sentencia en su contra. *Oriental Bank v. Caballero García, supra,* pág. 680.

B.

Al evaluar una moción de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición del Tribunal de Primera Instancia. *Serrano Picón v. Multinational Life Ins.*, *supra*, pág. 993; *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Tómese en cuanta que, nuestra revisión es una *de novo* y debemos basar nuestro análisis por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. A tenor, nuestro más alto foro ha esbozado los criterios que deben guiar esta revisión. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, *supra*, págs. 118-119. Por ello, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos y;

4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al., supra*, pág. 679.

Ahora bien, estamos limitados en cuanto a: (1) que no podemos tomar en consideración evidencia que las partes no presentaron ante el foro primario, y (2) tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al tribunal de instancia luego de celebrado un juicio en su fondo. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Al realizar nuestra revisión *de novo* debemos "examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro

primario, llevando a cabo todas las inferencias permisibles a su favor". *Id.*

C.

La Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4 de 26 de enero de 2017, según enmendada, 29 LPRA § 121 *et seq*, fue promulgada, entre otros aspectos, con el propósito de establecer las normas aplicables al contrato de empleo. La referida ley define contrato de empleo como aquel "mediante el cual una persona jurídica o natural, llamado ´patrono´, contrata a una persona natural, llamado ´empleado´ para que este preste servicios de naturaleza voluntaria para el beneficio del patrono o una tercera persona, a cambio de recibir compensación por los servicios prestados, [...] bajo la dirección directa del patrono". 29 LPRA § 122.

Referente al término prescriptivo, el Artículo 2.18, dispone que:

> Las acciones derivadas de un contrato de empleo o los beneficios que surgen en virtud de un contrato de empleo, **prescribirán al año, contado a partir del momento en que se pueda ejercer la acción**, a menos que se disponga expresamente de otra manera en una ley especial o en el contrato de empleo. No obstante, las causas de acción surgidas previo a la vigencia de esta Ley, tendrán el término prescriptivo bajo el ordenamiento jurídico anterior aplicable. 29 LPRA § 122q (Énfasis nuestro).

En este sentido, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250b *et seq*, en su Artículo 2 define el concepto de salario como "sueldo, jornal y toda clase de compensación, sea en dinero, especie, servicios, facilidades o combinación de cualesquiera de ellos". En lo pertinente al término prescriptivo, el Artículo 10 de la precitada ley dispone lo siguiente:

> **(a) Por el transcurso de un (1) año prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono al amparo de esta Ley**, ya aprobado o que se apruebe, de acuerdo con las disposiciones de esta Ley o al amparo de cualquier contrato o ley. **Para la prescripción de esta acción, el**

**tiempo se contará desde que el empleado cesó su empleo con el patrono.** El término de prescripción antes indicado se interrumpirá y comenzará a transcurrir de nuevo por la notificación de la deuda de salario al patrono, judicial o extrajudicialmente, por el obrero, su representante, o funcionario del Departamento con facultad para ello y por cualquier acto de reconocimiento de la deuda por el patrono.

.    .    .    .    .    .    .    .

**(c) En el caso de que el empleado hubiese cesado en su empleo con el patrono, la reclamación solamente incluirá los últimos tres <u>(3) años anteriores</u> a la fecha de su cesantía.** 29 LPRA § 250j (Énfasis nuestro).

### III.

En síntesis, el señor Maldonado Cancel arguye que erró el foro primario al dictar Sentencia Sumaria existiendo hechos esenciales y sustanciales en controversia. Veamos.

Como se indicó previamente, el 26 de agosto de 2024, Globus Medical presentó una *Moción en Solicitud de Sentencia Sumaria,* sin que el señor Maldonado Cancel presentara su oposición. Al considerar *de novo* la referida moción de sentencia sumaria instada por la parte apelada, surge que la afirmación de que al señor Maldonado Cancel se le pagaron las vacaciones, así como las comisiones adeudadas a base de ventas cobradas desde el inicio de su empleo en 2009, se sustentó en: 1) la deposición de Antonio Maldonado Cancel y 2) la declaración Jurada de Nathaniel Morris, Senior Sale Analyst de Globus. Examinada dicha prueba documental, concluimos que la misma resulta insuficiente para establecer los hechos medulares relacionados con el pago de vacaciones y de salario/comisiones, correspondientes a la primera y tercera causa de acción, respectivamente.

Por un lado, en cuanto a la reclamación de vacaciones, no obra en el expediente prueba alguna que acredite el alegado pago. El foro primario concluyó que "parte de la compensación del querellante era una cantidad mensual fija de salario de $3,333.00 que recibía todos los meses, independientemente de cuánto trabajo

desempeñara", conclusión que se desprende de la deposición del señor Maldonado Cancel.[7] No obstante, tanto de la *Querella* como de la deposición y de los demás documentos que obran en el expediente, surge que la cantidad de $3,333.00 no guarda relación con el reclamo por concepto de vacaciones, sino que corresponde al salario del señor Maldonado Cancel.[8] Además, el *Employee Handbook* de Globus Medical dispone en su sección sobre la política de vacaciones lo siguiente:

> Vacation time accrued and owing at the time of separation from the Company, will be paid at the time of separation. Vacation time is not generally cumulative and must be taken within one year from the beginning of every employment year. A maximum of five vacation days accumulated but not taken within a given year may be carried over to the next year, Vacation taken but yet earned by the time of separation will be deducted from the final paycheck.

Por otro lado, respecto a la reclamación de salario/comisiones, conviene resaltar que, de lo expresado en la deposición tomada al señor Maldonado Cancel, surge duda de cuándo debe pagársele la comisión. Por su importancia reproducimos *ad verbatim* parte de la prueba vertida en dicha deposición del 15 de febrero de 2023.

> P Así que realmente la compensación suya no era basada estrictamente en las ventas, sino que Globus tenía que **cobrarle al cliente** en relación a esas ventas para entonces otorgarle a usted la comisión de dos porciento (2%), ¿correcto?
> R. No, lo que sucede es que **mi contrato indica que la comisión se paga en un dos (2%) porciento de la <u>venta</u>** mía y de la venta de Luis Vargas. La cual **la compañía empezó a pagarme la comisión al <u>cobro</u>, cuando cobraba**.
> .      .      .      .      .      .      .      .
> P ¿Desde cuándo fue que se empezó a cobrar así, que se empezó a pagar al cobro? ¿desde cuándo?
> R Desde el principio.
> P O sea, que en efecto, a usted, **independientemente de lo que decía el contrato** a usted en efecto se le estaba pagando a base de lo que cobraba la compañía por lo que usted estaba vendiendo, ¿correcto?
> R Correcto.[9]

---

[7] Apéndice 5 del recurso, págs. 47-332; Toma de Deposición de: Antonio Maldonado Cancel el 15 de febrero de 2023, pág. 187, líneas 17-25.
[8] *Id.* pág. 193, líneas 1-25.
[9] *Id.* pág. 104, líneas 2-19.

. . . . . . . .

P ¿Así que si alguien aquí se sienta a decir: "mire, yo soy de Globus, ese dinero nunca se cobró", pues por lo tanto al no cobrarse, usted no tendría derecho a comisiones, ¿correcto?

R Correcto, que la compañía no cobran, no me pagaban. Cuando **el contrato indicaba que era a la venta, no era al cobro**.[10]

. . . . . . . .

R Sí, y eso se le reclamó a la compañía en más de cuatro (4) ocasiones. Que estaban haciendo el pago erróneamente, que era a la venta, no al cobro e hicieron caso omiso.[11]

En particular, la declaración jurada del señor Nathaniel Morris incluye una tabla compuesta por varias columnas, de las cuales dos detallan lo siguiente: 1) "Commissions Paid (on **payments**) con un total de $33,740.00, 2) "Commissions earned if paid on **sales**" con un total de $65,314.00. La primera columna incluye las comisiones ya pagadas. En cambio, la segunda columna muestra lo que le correspondería ganar si las comisiones se calcularan a base de venta. El señor Morris aseveró que "[t]he amount included in the "Commissions earned if paid on sales" column also includes what was actually paid to Mr. Maldonado based on payment". "It is the **policy** of Globus **to only pay commissions based on <u>payments</u>**, and has been so since before 2020." (Énfasis nuestro).

En este sentido, en la solicitud de sentencia sumaria presentada, Globus esgrimió como hecho incontrovertido #13 que "[e]l querellante reclama que se le adeudan comisiones independientemente de que la compañía haya o no cobrado los productos que el querellante haya vendido". Añadió como hecho incontrovertido #14 "**[n]o se le pagaron comisiones por servicios <u>rendidos pero no cobrados</u> por la suma de $31,574.00**".

Resulta forzosa, en consecuencia, la conclusión de que existe una controversia en cuanto a si el pago del salario/comisiones debía

---

[10] *Id.* pág. 108, líneas 20-25.
[11] *Id.* pág. 109, líneas 5-7.

efectuarse al momento de la venta o al del cobro, lo cual hace indispensable analizar el acuerdo contractual entre las partes para constatar la existencia de una deuda pendiente por servicios realizados, pero no cobrados. Así las cosas, la figura de incuria en este contexto es inaplicable. Ciertamente, al amparo de la *Ley Núm. 180-1998* la reclamación del señor Maldonado Cancel solamente incluirá los últimos tres (3) años anteriores a la fecha de su cesantía. 29 LPRA § 250j. De manera que procede revocar esa determinación, así como la relacionada con el reclamo de vacaciones.

Ahora bien, en lo que respecta a la reclamación de bonos correspondiente a los años 2020 y 2021, esta se encuentra prescrita al amparo del Artículo 2.18 de la *Ley Núm.4-2017*, por lo que corresponde confirmar dicha determinación.

IV.

Por los fundamentos antes expuestos, se *revoca* y se *confirma* en parte la Sentencia apelada. Se ordena la continuación de los procedimientos conforme lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones