# 2000 DTA 155

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO VI DE CAGUAS/HUMACAO/GUAYAMA**
**PANEL SUSTITUTO II**

HIPOLITA CORTIJO GARCIA
Recurrida

v.

ASOCIACION PUERTORRIQUEÑA DEL ESTE DE LOS ADVENTISTAS
DEL SEPTIMO DIA; ACADEMIA ADVENTISTA METROPOLITANA
Recurrentes

Núm. KLCE-2000-00441

San Juan, Puerto Rico, a 19 de junio de 2000

Panel integrado por su Presidenta, la Juez Pesante Martínez
y los Jueces Martínez Torres y Salas Soler

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Mediante el recurso de epígrafe, la peticionaria, Academia Adventista Metropolitana *("La Academia")*, nos solicita revisar la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, que declaró No Ha Lugar una solicitud de desestimación o, en su alternativa, de sentencia sumaria, presentada por éstos en el pleito incoado por Hipólita Cortijo García.

Examinado la totalidad del expediente ante nuestra consideración, denegamos la expedición del auto de *certiorari* solicitado.

### I

El 5 de septiembre de 1996, la Sra. Hipólita Cortijo García interpuso una querella contra la Academia, al amparo de la Ley Núm. 100 de 30 de julio de 1959, 29 L.P.R.A. §146 *et seq.*, por despido discriminatorio. Arguyó que fue discriminada por haber contraído matrimonio con una persona que no era de su misma religión, a saber, adventista.

De acuerdo a las alegaciones expuestas en la querella, la señora Cortijo García, en virtud de un contrato verbal, trabajó como profesora en la Academia por espacio de 14 años, comprendidos entre el mes de agosto de 1981 y el 5 de septiembre de 1995, fecha en que alegó fue despedida ilegalmente. Expresó, además, que la Academia, conforme a su reglamentación, tenía que darle mejores beneficios marginales al cumplir los 15 años de trabajo, incluyendo, entre otros, el derecho a la jubilación.

Solicitó, como alternativa, indemnización al amparo de la Ley Núm. 80 de 1916 (Despido Injustificado), según enmendada, 29 L.P.R.A. §185 *et seq.*

En su contestación, la Academia arguyó que, tomando en consideración la fecha de presentación de la

querella y que la señora Cortijo García había terminado su contrato el 31 de julio de 1995, la acción al amparo de la Ley Núm. 100, *supra*, estaba prescrita.

Luego de varios incidentes procesales, entre los cuales el tribunal se negó a desestimar la causa de acción de la recurrida, ■ la Academia presentó una moción en la cual reiteró su planteamiento de prescripción y, en la alternativa, solicitó que se dictara sentencia sumaria a su favor.

La Academia identificó una serie de hechos que no estaban en controversia. Entendemos pertinente resaltar algunos de esos hechos a los fines de lograr una mejor comprensión de los sucesos acontecidos en el caso de marras.

La señora Cortijo García solicitó un traslado de la Academia Adventista Metropolitana (en la cual trabajaba) a la escuela elemental de la Asociación Puertorriqueña del Este de los Adventistas del Séptimo Día (en adelante, *"Asociación")* ■ en el municipio de Guayama, Puerto Rico. Ello surgió como resultado de que la recurrida se iba a mudar a dicho municipio.

Evaluada la solicitud de traslado, la Asociación la recomendó favorablemente para trabajar en *"Braxton Schools of Puerto Rico"*, que a su vez ofrecía sus servicios educativos en la Escuela Elemental Adventista en Guayama. La Asociación se comprometió con la recurrida a acreditarle el tiempo que trabajara en *"Braxton"* como si fuera tiempo trabajado en una escuela de la Asociación.

El 11 de septiembre de 1995, la señora Cortijo García se personó a las oficinas de *"Braxton"*, conforme a la recomendación de la Asociación. Sin embargo, el 12 del mismo mes, la recurrida recibió una carta del Departamento de Educación de Puerto Rico donde le ofrecieron trabajo en una escuela pública de Guayama. Al día siguiente, comenzó a trabajar como maestra en la Escuela Pública José Núñez del Municipio de Guayama, Puerto Rico.

Conforme lo admitiera en una deposición que le fue tomada, la recurrida recibió los estatutos y reglamentos relativos al personal docente de la Academia, así como el *"Código de Educación"*.

Admitió, además, que el trabajo de maestra en la Asociación se contrata mediante voto de la Junta y es por el término del año escolar. El contrato para el curso escolar 1994-95 fue por el período comprendido entre el 6 de septiembre de 1994 hasta el 23 de junio de 1995. La recurrida se acogió al disfrute de sus vacaciones, luego de finalizar el año escolar, hasta el 31 de julio de 1995.

Reconoció que durante su último año escolar (1994-95) en la Asociación, lo hizo solamente a tiempo parcial. Durante todos los contratos de trabajo recibidos de la Asociación, siempre se desempeñó como maestra de comercio en la Academia Adventista Metropolitana (Río Piedras, Puerto Rico); en la Escuela Adventista de Guayama, que es un plantel escolar de nivel elemental, no se ofrecen cursos de comercio.

La señora Cortijo se mantuvo solicitando empleo como maestra del sistema público del Departamento de Educación de Puerto Rico, mientras trabajaba para la Asociación. Ello porque en la Asociación no era una empleada permanente.

En su moción, aunque negó que su hubiese despedido a la recurrida, la Academia planteó que es constitucionalmente permisible que la Iglesia Adventista requiera al personal docente de sus escuelas el cumplir con los dogmas de fe de dicha Iglesia para mantener su trabajo docente. Ello en relación a que la recurrida contrajo matrimonio con una persona no adventista o *"yugo desigual"* (denominación provista por los documentos reglamentarios de la Academia), motivo por el cual la recurrida alegó fue despedida. En el mismo documento, le imputó falta de jurisdicción al tribunal de instancia para entender en el asunto, dado que ello equivaldría a pasar juicio y/o adjudicar la naturaleza, extensión y significado de un dogma de fe de la Iglesia

Adventista.

Arguyó la Academia que los hechos incontrovertidos demostraron que la recurrida nunca fue despedida de su empleo. Por el contrario, la señora Cortijo García se separó de su empleo voluntariamente, al aceptar otro empleo en la escuela pública en el municipio de Guayama.

Habida cuenta de que la recurrida disfrutó de sus vacaciones durante el mes de julio de 1995, y que su contrato venció el 31 de ese mismo mes, la Academia alegó que la acción estaba prescrita, toda vez que había transcurrido el año reglamentario para presentar su reclamación al amparo de la Ley Núm. 100, *supra*.

Oportunamente, la señora Cortijo García se opuso a que se dictara sentencia sumaria o se desestimara su causa de acción por prescripción. En síntesis, alegó que de la documentación sometida por la Academia, en apoyo a su solicitud, surgía claramente que la acción se instó dentro del término del año requerido por la jurisprudencia. Adujo que el contrato entre la Academia y la recurrida era verbal y que no se establecieron condiciones de trabajo, ni cláusula de *"yugo desigual"*. Entendió que el acuerdo verbal no le impedía casarse con una persona que tuviese una religión distinta a la suya. Por ello, alegó en su escrito que existía una legítima controversia sobre la causa de separación de su empleo y la fecha en que ocurrió la misma. Finalmente, arguyó que ante un reclamo al amparo de la Ley Núm. 100, *supra*, o de la Ley Núm. 80, *supra*, es el patrono quien tiene que rebatir la presunción de discrimen y despido ilegal que establecen dichos estatutos.

En su réplica, la Academia señaló que *"sólo corresponde a las propias autoridades eclesiásticas de la Iglesia Adventista determinar el "alcance", "significado", "extensión" y "compulsoriedad" de cumplimiento sobre el principio dogmático de dicha Iglesia que establece: "No os unáis en yugo desigual con los incrédulos."*

Así las cosas, y luego de evaluar la posición de ambas partes, el tribunal de instancia entendió que era necesario determinar si el despido de la señora Cortijo García fue uno injustificado o discriminatorio. Estableció que los tribunales de justicia tenían la autoridad para determinar la naturaleza del alegado incumplimiento contractual que culminó en el despido de un demandante, aunque se trate de un contrato de empleo con una entidad religiosa.

Concluyó, además, que era menester celebrar un Juicio en su fondo y era improcedente resolver el caso mediante una sentencia sumaria, debido a que existía controversia real en cuanto a por lo menos tres hechos materiales, a saber:

*"A. La fecha de la efectividad del alegado despido de la señora Cortijo García. De ello dependería la procedencia de la defensa de prescripción.*

*B. La causa de la separación, incluyendo la existencia de una separación alegadamente discriminatoria por parte de la Academia, que ocasionó el despido de la recurrida.*

*C. Los términos del contrato verbal que delimiten el ámbito obligacional entre las partes y la duración del mismo."*

Por tanto, el tribunal recurrido declaró No Ha Lugar la solicitud de sentencia sumaria presentada por la Academia. Insatisfecha con dicha determinación, la Academia recurrió ante nos imputándole abuso de discreción al tribunal *a quo* al negarse a conceder el remedio solicitado. No le asiste la razón. Veamos.

**II**

La Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, permite a un demandado *"presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación." Revlon v. Las Américas Trust Co.,* ___ D.P.R. ___ (1994)

**91 J.T.S 27**, opinión de 15 de mayo de 1994; *H.M.C.A. (P.R.) Inc. v. Contralor,* ___ D.P.R. ___ (1993), **93 J.T.S. 112,** opinión de 30 de junio de 1993; *World Wide Food Distributors, Inc. v. Colón Bermúdez,* ___ D.P.R. ___ (1993), **93 J.T.S. 114,** opinión de 30 de junio de 1993.

La sentencia sumaria, como instrumento procesal, es un remedio discrecional extraordinario que sólo se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Mediante dicho mecanismo procesal se pretende obtener un remedio rápido y eficaz en casos en que quede demostrado que existe una controversia sobre los hechos materiales del litigio. *P.F.Z. Properties v. General Accident Insurance,* ___ D.P.R. ___ (1914), **94 J.T.S. 116,** opinión de 7 de septiembre de 1994; *Medina Morales v. Merck, Sharp & Dome,* ___ D.P.R. ___ (1994), **94 J.T.S. 52,** opinión de 7 de abril de 1994; *Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras,* ___ D.P.R. ___ (1993), opinión de 25 de agosto de 1993. Utilizada de forma apropiada, la sentencia sumaria contribuye a descongestionar los calendarios judiciales. *Méndez Arocho v. El Vocero de P.R.,* 130 D.P.R. 867 (1992).

Dos son las determinaciones que debe hacer un tribunal para que pueda disponer del caso sumarianiente: que no exista controversia en cuando a los hechos, y que en derecho proceda emitir sentencia a favor de la parte que lo solicita.

Cuando la parte que solicita la sentencia sumaria, ha sometido su moción debidamente apoyada por declaraciones juradas y/o documentos que tiendan a establecer que no existe controversia de hechos, la parte contraria no puede descansar solamente en las aseveraciones o alegaciones contenidas en su demanda. Este viene obligado a contestar en forma tan detallada y específica, como lo hubiera hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestre que existe una controversia real que debe ser dilucidada en juicio. La omisión por la parte que se opone a la sentencia sumaria de incluir declaraciones juradas u otra documentación que apoye su posición, no implica que el no incluirlas sea base para que se emita un dictamen sumario automáticamente, pero le pone en riesgo de que ello ocurra. *P.F.Z. Properties v. General Accident Insurance, supra; Pilot Life Insurance Company v. Crespo Martínez,* ___ D.P.R. ___ (1994), **94 J.T.S. 104,** opinión de 13 de julio de 1994; *Corp. of the Presiding Bishop v. Purcell,* 117 D.P.R. 714 (1987). Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones hechas por las partes. *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272.

El uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que, por lo tanto, una vista en los méritos resultaría innecesaria. *Casto Soto v. Hotel Caribe Hilton,* ___ D.P.R. ___ (1994), **94 J.T.S. 128,** opinión de 17 de octubre de 1994.

El tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *P.F.Z. Properties v. General Accident Insurance, supra,* a la pág. 125.

Por otro lado, el texto de la Regla 36.4 de Procedimiento Civil, *supra,* según redactado en 1958 y ratificado en las Reglas de Procedimiento Civil de 1979, *"hace énfasis en el carácter mandatario de la determinación de los hechos materiales que están realmente y de buena fe controvertidos."* J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil,* **Publicaciones J.T.S.,** 1979, Vol. II, pág. 192.

La Regla 36.4 de Procedimiento Civil, *supra,* impone el deber al juez de primera instancia de determinar los hechos en controversia y declarar los que no lo están cuando no pueda dictar sentencia sumaria, siempre que ello contribuya a ahorrar gastos y esfuerzo y a simplificar los asuntos pendientes para juicio en su fondo.

El tribunal apelativo utilizará los mismos criterios que el tribunal de instancia al determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación de instancia, el foro apelativo está limitado de dos maneras: Primero, sólo puede considerar los documentos que se presentaron ante el foro de instancia. Las partes no pueden añadir en apelación exhibits, deposiciones o *"affidavits"* que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. Segundo, el tribunal apelativo solamente puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta. No debe adjudicar los hechos materiales en disputa. Esa tarea le corresponde al foro de instancia.

Al analizar los hechos del presente caso, no podemos sino concluir que el foro de instancia no abusó de la discreción que le fue conferida. Veamos.

Existen litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente, en tales casos, el tribunal puede reunir toda la verdad de los hechos mediante el examen directo de los *"affidavits"* o deposiciones que tiene ante su consideración.

En este caso encontramos una de esas controversias típicas, centradas en elementos subjetivos, como la intención y los propósitos mentales, en las que el factor de credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad y donde un litigante depende de gran medida de lo que extraiga del contrario, en el curso de un juicio en su fondo. *García López v. Méndez García,* 88 D.P.R. 363, 379 (1963). Constituye una de esas situaciones donde, por su naturaleza, el tribunal de instancia podría no tener ante sí toda la verdad de los hechos, mediante el uso exclusivo de los documentos existentes en los autos. *Soto v. Hotel Caribe Hilton, supra.*

Según resuelto, reiteradamente, por el Tribunal Supremo, toda vez que existen dudas de la procedencia de la moción, o de las alegaciones respondientes, la misma debe ser resuelta en contra de la parte que la propuso. Véanse, *Bonilla Medina v. Partido Nuevo Progresista,* ___ D.P.R. ___ (1996), **96 J.T.S. 33**, a la pág. 790; *Rivera Santana v. Superior Packing, Inc.,* ___ D.P.R. ___ (1992), **92 J.T.S. 165**, a la pág. 10165.

El tribunal de instancia claramente estableció cuáles eran los hechos fundamentales en controversia que impedían se resolviese el pleito mediante una sentencia sumaria.

Examinada la documentación que obra en el expediente, concurrimos con el tribunal recurrido en que la sentencia sumaria no es el mecanismo procesal adecuado para disponer del pleito.

Están en controversia hechos medulares que requieren dilucidarse en una vista plenaria donde desfile prueba conducente a establecer los mismos. Es necesario que el tribunal tenga suficientes elementos de juicio ante sí para adjudicar correctamente tales hechos. Ello, a su vez, exige que el tribunal evalúe elementos subjetivos, a los cuales adjudicará credibilidad en el ejercicio de su discreción.

Indubitablemente, están en controversia la fecha en que se celebró el contrato y su vigencia; el despido injustificado y discriminatorio de la señora Cortijo García; el contenido del contrato; y dada la determinación de la fecha del contrato, si la acción estaba prescrita.

Un examen del contrato verbal celebrado entre las partes para determinar las condiciones y los términos bajo los cuales se celebró el mismo, necesariamente requiere el testimonio en corte abierta de las partes que participaron en el acuerdo. Ello no puede ser determinado con una mera observación de los documentos que acompañan la solicitud de sentencia sumaria.

En apoyo a su contención, la peticionaria citó en su escrito el caso de *Mercado Rivera v. Universidad*

*Católica de Puerto Rico,* ___ D.P.R. ___ (1997), **97 J.T.S. 106**, opinión de 27 de junio de 1997. El citado caso es claramente distinguible al caso de autos en que el mismo versaba sobre un contrato por escrito. Es necesario determinar si dada la existencia de un contrato verbal, aplicaba a la recurrida la prohibición a unirse a un *"yugo desigual"*. Nuevamente, esto depende de que se determinen las condiciones y términos del contrato.

En relación a la fecha del contrato, la Academia alegó que el mismo venció el 31 de julio de 1995; [3] no obstante, la recurrida aduce que fue despedida el 5 de septiembre del mismo año. Obviamente, la discrepancia constituye una controversia que no puede resolverse mediante una sentencia sumaria, habida cuenta de que no existe un documento que establezca fehacientemente la fecha de vigencia del contrato.

La determinación de la fecha del contrato y el despido injustificado o discriminatorio alegado por la recurrida, es vital para proceder a resolver si la acción efectivamente estaba prescrita, privando así al tribunal de jurisdicción para entender en el asunto.

Como podemos advertir, en el caso de marras es imprescindible la celebración de un juicio en sus méritos para adjudicar adecuadamente las controversias planteadas. Resolvemos que no abusó el tribunal de instancia al negarse a disponer del pleito mediante sentencia sumaria.

Por todo lo anterior, denegamos la expedición del auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

El Juez Martínez Torres concurre con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria General